IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRETA EVANS,                          )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )      1:23-cv-8
                                      )
DENIS R. MCDONOUGH, SECRETARY,        )
DEPARTMENT OF VETERANS AFFAIRS,       )
                                      )
          Defendant.                  )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss or, in the
Alternative, Motion for Summary Judgment filed by Defendant
Denis R. McDonough, Secretary, Department of Veterans Affairs.
(Doc. 9.) For the reasons set forth herein, this court will
grant in part Defendant's motion to dismiss.

## I.   FACTUAL BACKGROUND

This court may consider "'documents incorporated into the
complaint by reference,' Tellabs, Inc. v. Makor Issues & Rights,
Ltd., 551 U.S. 308, 322 [(2007)], 'as well as those attached to
the motion to dismiss, so long as they are integral to the
complaint and authentic,' [Philips v. Pitt Cnty. Mem'l Hosp.,
572 F.3d 176, 180 (4th Cir. 2009)]," without converting
Defendant's motion to dismiss to one for summary judgment. U.S.

ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). See also Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 508 (4th Cir. 2015). Though Defendant moves for summary judgment in the alternative, (see Def. McDonough's Mot. to Dismiss or in the Alt. Mot. for Summ. J. ("Def.'s Mot.") (Doc. 9) at 1), this court is inclined to consider Plaintiff's and Defendant's exhibits without converting the motion to summary judgment when, as here, a plaintiff is pro se and no dispute is raised as to the authenticity of either Plaintiff's or Defendant's exhibits.

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint[.]" Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). Accordingly, the facts, construed in the light most favorable to Plaintiff, are as follows.

Plaintiff Greta Evans ("Plaintiff") was employed by the United States Department of Veterans Affairs ("the Agency") to work as a Program Support Assistant at the W.H. Hefner Medical Center in Salisbury, North Carolina from February 19, 2019, to March 19, 2020. (Complaint ("Compl.") (Doc. 1) ¶ 2; Def.'s Ex.

A-2 ("Pl.'s SF-52 Appointment") (Doc. 10-4) at 1.)[1] The position
was a term appointment, meaning it was a "non-status,
nonpermanent appointment[] of limited duration (more than 1 year
but not more than 4)." (Pl.'s Ex. AA ("Job Advertisement")
(Doc. 1-1) at 4.) Plaintiff's term as Program Support Assistant
was not to exceed thirteen months, and the position was
temporary because it was funded by grant money. (Id.; Pl.'s SF-
52 Appointment (Doc. 10-4) at 2.) Defendant asserts that "during
the interviews conducted for the position, held on December 19
and 21 of 2018, 'it was verbally stated to all applicants that
the funding for this position ends on September 30, 2019.'" (Br.
in Supp. of Def.'s Mot. to Dismiss or in the Alt. Mot. for Summ.
J. ("Def.'s Br.") (Doc. 10) at 4 (quoting Def.'s Ex. A-3
("Program Support Assistant Interview notes") (Doc. 10-5) at
1).) Plaintiff responds that the Program Support Assistant
position "was not presented as being subject to any one grant
being funded." (Plaintiff's Response ("Pl.'s Resp.") (Doc. 12)
at 6.)

As the Program Support Assistant, Plaintiff "assist[ed] the
Research Coordinator in the day-to-day operations and

---

[1] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

administrative support" of the Mental Illness Research Education and Clinical Center ("MIRECC") at Hefner Medical Center. (Job Advertisement (Doc. 1-1) at 4; Compl. (Doc. 1) ¶ 2.) Plaintiff's duties included, <u>inter alia</u>, handling the enrollment process for MIRECC research studies, working with "patient records or other pertinent research data," monitoring quality of data, and "prepar[ing] documents and research[ing] matters for the staff, including documents that are confidential and/or technical in nature." (Job Advertisement (Doc. 1-1) at 5.) "There were a myriad of responsibilities requiring her to work on multiple grant surveys, office projects, and research. [Plaintiff] supported each doctor, fellow and staff member in MIRECC as needed, not one study." (Pl.'s Ex. B ("Pl.'s May 19, 2022 EEOC Statement") (Doc. 1-2) at 4.)

Plaintiff alleges that she suffers from certain disabilities which render her a "90% service-connected disabled veteran."[2] (Compl. (Doc. 1) ¶ 11.) These disabilities include "damage to her back, . . . loss of short-term memory, tightness of throat, atrophy in fingers on left hand, pain in left side of face, eyes, nostril, left leg, and toes from the damage of

_____

[2] In her complaint, Plaintiff raises several allegations regarding the inadequacy of her medical care as a veteran and VA patient. (<u>See</u> Compl. (Doc. 1) ¶¶ 7-14.) These allegations are beyond the scope of Plaintiff's employment discrimination action and will not be considered by this court.

stroke[.]" (Pl.'s Resp. (Doc. 12) at 5; Compl. (Doc. 1) ¶ 14.) Despite these disabilities, Plaintiff alleges that she "was fit for her role as the Program Support Assistant," (Compl. (Doc. 1) ¶ 15), and "went beyond in performing her role according to her job description," (Pl.'s Resp. (Doc. 12) at 6). Plaintiff is a former Veteran Army Logistics Officer and holds graduate degrees in Healthcare Administration, Management, and Human Resources Development, as well as undergraduate degrees in Biology and Human Resource Management. (Id. at 9.)

On July 12, 2019, Plaintiff was informed by MIRECC doctors Katherine Taber-Maier, Jared Rowland, and Sarah Martindale-Supak that her "job title was not funded for an upcoming study and [her] position would end 30 September 2019." (Def.'s Ex. A-5 ("Email from Pl. Requesting Written Notice of Termination") (Doc. 10-7) at 1.) At this meeting, Plaintiff alleges that her supervisors told her the "termination did not stem from any professional deficiencies, that she did good work, and the Agency would be supportive in her attempts to locate another position." (Pl.'s Resp. (Doc. 12) at 9.)

Plaintiff filed a complaint with the Agency's Office of Resolution Management ("ORM") on September 9, 2019, alleging discriminatory termination. (Def.'s Ex. A-9 ("EEO Counselor Report") (Doc. 10-11) at 1.) The two bases for Plaintiff's ORM

- 5 -

complaint were "Reprisal for prior EEO activity (case number unspecified)," and "Disability (Physical)." (Id. at 2.)

A. **Disability Discrimination**

Plaintiff told her ORM counselor that, on an unspecified date, she heard Dr. Martindale-Supak, Dr. Rowland, "and another unknown party say in a conversation, 'she can't be in that position because she has the same condition as the veterans we are studying.'" (Id.) Additionally, Plaintiff heard Dr. Taber-Maier "discussing [Plaintiff] having the same condition as the veterans being assessed." (Pl.'s May 19, 2022 EEOC Statement (Doc. 1-2) at 4.)

After the July 12, 2019 meeting with the three MIRECC doctors, when Plaintiff was informed that the Agency would be terminating her appointment on September 30, 2019, due to funding ending, (Def.'s Ex. A-4 ("Email from Dr. Martindale-Supak to James Grimm") (Doc. 10-6) at 1), Plaintiff "was no longer allowed to code information in medical records from assessments of veterans with PTSD or process the assessments." (Pl.'s May 19, 2022 EEOC Statement (Doc. 1-2) at 4.)

Plaintiff concedes that "[t]he Salisbury VA does not allow one with a severe mental health condition to access the records of veterans or employees," but argues that her VA medical records stating that she has "severe mood swings, extreme

- 6 -

depression and a serious mental health condition" are false.
(Id. at 3.) Plaintiff asserts that she "never has extreme
depression or extreme mood swings," (id.), and alleges the
Agency falsely "labeled her because she made a complaint with
Department of Military and Veterans (DMilVets)," (id. at 4).
Plaintiff further alleges that "she believed she was
discriminated against based on disability (physical) because her
term position was announced as a 13-month position, but she
alleged she was released after Dr. Taber, Dr. Martindale-Supak,
and Haamid Abdul-Mutakallim, Human Resources Specialist, became
aware of her disability." (EEO Counselor Report (Doc. 10-11) at
2.)

## B. **Prior EEO Activity**

As to the reprisal allegations, Plaintiff alleged her
belief that "she was discriminated against based on reprisal for
a previous EEO case she filed with a different agency in 2010,"
though "[u]pon further inquiry, [Plaintiff] stated she was
unsure if Dr. Taber, Mr. Abdul-Mutakallim, or Dr. Martindale-
Supak was aware of her previous EEO activity in 2010[.]" (Id.)
Plaintiff alleges that "[b]etween 2010 and 2012," she "was
engaged in previous EEOC action vis-à-vis the Agency." (Compl.
(Doc. 1) ¶ 6.) This EEO action yielded a favorable outcome to

Plaintiff, but she "kept working for the Agency as a veteran army officer with service-connected disabilities." (Id.)

Plaintiff alleges that she discussed this prior EEO activity with the MIRECC's assistant timekeeper or coordinator "after [Plaintiff] applied for the disabled veterans leave Feb 2019 and needed assistance from the timekeeper to get the full year of benefits." (Pl.'s May 19, 2022 EEOC Statement (Doc. 1-2) at 2.) Plaintiff alleges that this MIRECC employee "questioned in March 2019 why [Plaintiff] already had significant leave and sick time and insisted on knowing what happened." (Pl.'s Resp. (Doc. 12) at 4.) The timekeeper "saw the large amount of unused leave" Plaintiff had previously accrued, and "illegally erased all the leave time [Plaintiff] had in the system from previous employment." (Pl.'s May 19, 2022 EEOC Statement (Doc. 1-2) at 2.) The timekeeper asked Plaintiff if she had previously been a federal employee, Plaintiff said she had, and the timekeeper asked when and for how long Plaintiff had been a federal employee. (Id.) Plaintiff alleges the timekeeper told Plaintiff that "she would be found out another way if needed because [the timekeeper] had worked in the past in HR/admin." (Id.) Plaintiff then explained her prior EEO activity that took place in 2010, after which the timekeeper "went into Dr. Tabor's [sic] office and [Plaintiff] could hear Dr. Tabor [sic] telling someone, 'She

got fired.' Her door had a three-inch gap from the floor." (Id.)
Additionally, Plaintiff alleges that "[s]he heard a group of
doctors discussing her being fired," and that MIRECC staff
"stopped interacting her about files she was processing." (Id.
at 4.) Plaintiff alleges she "was repeatedly emails [sic]
generated from the MIRECC database that a file of a veteran was
incomplete," but the coordinator "said you are leaving so you
don't need to do anything with the file." (Id.)

Plaintiff alleges that, some time after she was notified
that her position would be terminating, the Agency's "HR
representative used medical help requests by [Plaintiff] as
justification of the termination" and "repeatedly admonished
[Plaintiff] for canceling medical appointments and for making
congressional(s)."[3] (Pl.'s Resp. (Doc. 12) at 9.) Plaintiff
further alleges that this HR representative "confirmed they
accessed her medical records as she defended the termination,"
(id. at 9), and "the Agency brought copies of their response to

_____

[3] It appears that, during Plaintiff's employment with the
Agency as a MIRECC Program Support Assistant, Plaintiff
"requested assistance from MILVETS because EEO rights and VA
disability rights were being denied by the VA. The Agency, in
justification of the termination of employment, discussed
details of [Plaintiff's] medical records and admonished
[Plaintiff] accusing her of writing Congressional's against the
VA." (Pl.'s Resp. (Doc. 12) at 4.)

- 9 -

the complaints[4] to the meeting on her loss of employment." (id. at 4). During "an initial discussion" of Plaintiff's termination as Program Support Coordinator, Plaintiff alleges that "the VA HR representative gave detailed review of [Plaintiff's] medical appointments and that [Plaintiff] filed congressional's (against the VA) as justification for the termination of employment." (Pl.'s May 19, 2022 EEOC Statement (Doc. 1-2) at 5.) Plaintiff's representative "asked HR agent why she was discussing personal medical information in a meeting on employment if indeed medical records and employment are kept separate. The HR representative stated, the same HR department responds to congressionals." (Id.)

C. **Plaintiff's Termination**

On September 24, 2019, Plaintiff requested a written notice of termination from the Agency, (Email from Pl. Requesting Written Notice of Termination (Doc. 10-7)), and received that notice the same day, (Def.'s Ex. A-6 ("Written Notice of Termination") (Doc. 10-8)). The notice reiterated "[t]he reason for expiration of the appointment is that Research and Education no longer has funding for the position." (Written Notice of Termination (Doc. 10-8) at 1.)

---

[4] It appears to this court that the "complaints" to which Plaintiff refers are her MILVETs complaint regarding her medical care and her EEO complaint filed September 9, 2019.

The Program Support Assistant position Plaintiff held has not been filled. (Def.'s Br. (Doc. 10) at 4.) Instead, Plaintiff alleges that the MIRECC "posted a position at the next [grade] level that encompassed her job on her last day in the office." (Pl.'s May 19, 2022 EEOC Statement (Doc. 1-2) at 1.) It appears that Plaintiff's duties were consolidated into a new role called "Program Support Coordinator and Health Scientist," a position Plaintiff alleges was first advertised by the Agency on September 28, 2019. (Pl.'s Resp. (Doc. 12) at 8.) Plaintiff alleges this job was "one level above the position" held by Plaintiff, and it "was posted as competitive to prevent [Plaintiff] from being able to apply in the normal process." (Id.) Plaintiff alleges that the "new position required a graduate degree. [Plaintiff] had three[,] as was equally or more qualified than the person they hired. The existing Program Support Coordinator did not have a college education." (Id.) Further, Plaintiff argues that "[w]ith a Schedule A letter, graduate level experience and education in human resources, management, healthcare administration, logistics, and operations [Plaintiff] should have been placed in another job except the goal was to terminate her." (Pl.'s May 19, 2022 EEOC Statement (Doc. 1-2) at 2.) Plaintiff further emphasizes that "[w]ith a Schedule A Letter, she could be placed in any position available

- 11 -

she is qualified to perform. They did not offer any of many jobs posted and she was enrolled in vocational rehabilitation program at the time. They posted new positions as internal to keep her ineligible . . . . The intent was to terminate her pretending as a funding issue." (Id.)

## II.  **PROCEDURAL HISTORY**

Plaintiff requested a hearing before the EEOC on August 3, 2020, and the EEOC conducted an Initial Conference on November 24, 2020. (Def.'s Ex. A-12 ("EEOC Decision dated February 17, 2021") (Doc. 10-14) at 1.) The EEOC granted summary judgment[5] in favor of the Agency on February 17, 2021. (Id. at 1.) Plaintiff filed an appeal on March 19, 2021, and the order granting summary judgment in favor of the Agency was affirmed. (Def.'s Ex. A-13 ("EEOC OFO Decision dated April 6, 2022) (Doc. 10-15) at 5.) Plaintiff requested reconsideration on April 6, 2022, and this request was denied. (Pl.'s Ex. C ("Decision on Request for Reconsideration") (Doc. 1-3) at 2.) Accordingly, Plaintiff alleges that she has exhausted all available administrative remedies prior to filing this action. (Compl. (Doc. 1) ¶ 3.)

Plaintiff filed a complaint with this court on January 4, 2023. (Compl. (Doc. 1.)) The Agency moved to dismiss for failure

---

[5] Plaintiff was sanctioned and not permitted to participate in discovery during this proceeding "due to repeated failure to comply with EEOC Orders." (Id. at 1.)

to state a claim or, in the alternative, for summary judgment and filed a brief in support. (Def.'s Mot. (Doc. 9.); Def.'s Br. (Doc. 10).) Plaintiff responded, (Pl.'s Resp. (Doc. 12)), and the Agency replied, (Def.'s Reply (Doc. 13)). The Agency's motion is now ripe for review.

## III. **STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Id. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." Est. of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the

- 13 -

elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Employment discrimination complaints must meet the Twombly/Iqbal plausibility standard; however, the plaintiff is not required to make out a prima facie case or satisfy any heightened pleading requirements at the motion to dismiss stage. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 584-85 (4th Cir. 2015). The plaintiff is, however, required to plead facts that permit the court to reasonably infer each element of the prima facie case, including less favorable treatment than similarly-situated employees outside of the protected class. McCleary-Evans, 780 F.3d at 585. See also Iqbal, 556 U.S. at 682-83 (plaintiff must plead facts supporting reasonable inference of discriminatory intent); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 191 (4th Cir. 2010) (stating that a complaint must "assert facts establishing the plausibility" that plaintiff was terminated based on race). Once the plaintiff has made a plausible showing of each element, the claim will survive a motion to dismiss and the burden then shifts to the defendant to provide "some legitimate, nondiscriminatory reason" for the disparate treatment. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

- 14 -

Along with liberally construing the complaint in Plaintiff's favor, this court must also recognize that Plaintiff is proceeding pro se. "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). Nevertheless, the liberal construction of a pro se complaint does not "undermine Twombly's requirement that a pleading contain 'more than labels and conclusions[.]'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (citation omitted).

## IV. ANALYSIS

### A. Disability Discrimination

The Rehabilitation Act[6] prohibits executive agencies from discriminating against their employees on the basis of disability. See 29 U.S.C. § 794(a). The substantive standards for determining liability under the Rehabilitation Act are the

---

[6] Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, (see Compl. (Doc. 1) at 1), but in consideration of her pro se status, this court is inclined to construe Plaintiff's claims under the Rehabilitation Act.

same as those under the Americans with Disabilities Act.[7] Myers
v. Hose, 50 F.3d 278, 281 (4th Cir. 1995).

To establish a prima facie case of discriminatory
termination against a federal employer under the Rehabilitation
Act, a plaintiff must show that (1) she has a disability, (2)
she is otherwise qualified to perform the job, and (3) she was
terminated solely because of her disability. See Baird ex rel.
Baird v. Rose, 192 F.3d 462, 467-68 (4th Cir. 1999). At the
motion to dismiss stage, Plaintiff need not make out a prima
facie case, but must plead facts that permit this court to
reasonably infer each element of the prima facie case. McCleary-
Evans, 780 F.3d at 585; see also Iqbal, 556 U.S. at 682-83
(plaintiff must plead facts supporting reasonable inference of
discriminatory intent).

Under the Rehabilitation Act, a person has a disability if
they (1) have "a physical or mental impairment that
substantially limits one or more major life activities"; (2)
have "a record of such impairment"; or (3) are "regarded as

---

[7] "Although the ADA and Rehabilitation Act generally are
construed to impose the same requirements," the Fourth Circuit
"has recognized that the causation standards under Title II of
the ADA and § 504 of the Rehabilitation Act are 'significantly
dissimilar.' Constantine v. Rectors and Visitors of George Mason
University, 411 F.3d 474, 498 n.17 (4th Cir. 2005) (quoting
Baird, 192 F.3d at 469) (cleaned up).

- 16 -

having such an impairment." 42 U.S.C. § 12102(1). See 29 U.S.C. § 705(20)(B); 29 C.F.R. § 1630.2(j)(1)(ii). An impairment is substantially limiting if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 573 (4th Cir. 2015) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

"A 'qualified' individual is one 'who, with, or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements' for participation in a program or activity." Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 462 (4th Cir. 2012). "In the specific context of employment, a 'qualified' individual is one who, with or without reasonable accommodation, can perform all of the essential functions of his or her employment." Biniaris v. Hansel Union Consulting, PLLC, 382 F. Supp. 3d 467, 473 (E.D. Va. 2019) (citing Halpern, 669 F.3d at 461; Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 213 (4th Cir. 1994)). "'Essential functions' means 'the fundamental job duties of the employment position the individual with a disability holds or

- 17 -

desires' and 'does not include the marginal functions of the position.'" Blackburn v. Trustees of Guilford Tech. Cmty. Coll., 733 F. Supp. 2d 659, 664 (M.D.N.C. 2010) (quoting 29 C.F.R. § 1630.2(n)(1)).

"[A] plaintiff seeking relief under § 504 of the Rehabilitation Act must prove that the defendants' discriminatory conduct was 'solely by reason' of the plaintiff's disability." Constantine, 411 F.3d 474, 498 n.17 (4th Cir. 2005) (quoting Baird, 192 F.3d at 469–70). However, at the motion to dismiss stage, a plaintiff need only allege facts plausibly demonstrating that she may have been dismissed "solely by reason of her . . . disability," rather than provide definitive proof. See Constantine, 411 F.3d at 498 n.18 (reversing the district court's dismissal of plaintiff's Rehabilitation Act claims because "the complaint fairly may be read to allege that the defendants discriminated against Constantine because of her disability"); Britt v. DeJoy, No. 20-1620, 2022 WL 4280495, at *2 (4th Cir. Sept. 14, 2022) ("Britt failed to plausibly state a claim under [the Rehabilitation Act] as she did not allege facts demonstrating that she was dismissed 'solely by reason of her . . . disability.' . . . [S]he offers nothing more than mere speculation that this occurred due to her disability."); Emanuelson v. Univ. of N.C. at Greensboro, No. 17CV534, 2018 WL

1779342, at *11 (M.D.N.C. Apr. 12, 2018) ("Plaintiff need not have specifically alleged that he was dismissed 'by reason of, or solely by reason of, his disability.' . . . As noted, the facts alleged in the complaint make plausible Plaintiff's ultimate claim that he was dismissed from the program because of disability discrimination. . . . Thus, despite Defendants' arguments to the contrary, Plaintiff stated a plausible claim under the ADA and the Rehabilitation Act.").

Here, Plaintiff alleges sufficient facts from which this court can infer that she has a disability within the meaning of the Rehabilitation Act. Plaintiff alleges that she suffers from, among other conditions, nerve damage to the left side of her face, atrophy in her left hand, injury to her neck and back, and has experienced changes in her white brain matter due to stroke. (See Compl. (Doc. 1) ¶¶ 7, 10, 11, 14.) It is reasonable to conclude that these disabilities can substantially limit Plaintiff's ability to perform major life activities, particularly physical activity, as compared to most people in the general population who do not suffer from these ailments. Further, Plaintiff provides medical records corroborating her disabilities. (See generally Pl.'s Ex. E ("Pl.'s Medical Records") (Docs. 2, 2-1).) Accordingly, Plaintiff sufficiently alleges that she suffers from a disability.

Plaintiff alleges that, despite her disabilities, she "was fit to perform her role as Program Support Assistant." (Compl. (Doc. 1) ¶ 16.) The role required Plaintiff to organize information and develop reports, prepare documents for MIRECC staff, assist with scheduling and meeting coordination, maintain records, input and monitor the quality of data, work with patient records, and handle most aspects of the MIRECC study enrollment process. (See Job Advertisement (Doc. 1-1) at 4, 5.) Plaintiff's alleged disabilities do not indicate that she is unable to perform any of these functions. Further, Plaintiff asserts that her "termination did not stem from any professional deficiencies, that she did good work, and that the Agency [told her it] would be supportive in her attempts to locate another position." (Pl.'s Resp. (Doc. 12) at 9. See also Email from Pl. Requesting Written Notice of Termination (Doc. 10-7) at 1; Def.'s Ex. B ("EEO Investigative Affidavit") (Doc. 10-16) at 3.) Accordingly, at this stage, Plaintiff alleges facts sufficient for this court to infer that, despite her alleged disability, she was otherwise qualified to perform her job.

While Plaintiff does not offer definitive proof that her termination occurred solely because of her disability, she does allege facts demonstrating that she was terminated after supervisors learned of her disabilities and that the Agency's

- 20 -

cited reason for termination, lack of grant funding, may have
been pretextual. Plaintiff alleges that MIRECC staff discussed
her "having the same condition as the veterans being assessed,"
(Pl.'s May 19, 2022 EEOC Statement (Doc. 1-2) at 4), she "was no
longer allowed to code information in medical records from
assessments of veterans with PTSD, (id.), and an Agency HR
representative "confirmed they accessed her medical records"
when Plaintiff attempted to prevent her termination, (Pl.'s
Resp. (Doc. 12) at 9). Plaintiff acknowledges that her position
was funded by grants, but argues that "the Agency received grant
funding to survey studies for fiscal year 2020," and that her
position was funded by "all grants" because she "was hired to
work on and did work on several survey studies with different
grants." (Id. at 7.)

Plaintiff further indicates that the lack of funding may
have been a pretextual reason for her termination because,
though "the grant-funded Program Support Assistant position that
was occupied by [Plaintiff] was not filled," "the Agency posted
a position on Friday, September 28, 2019, for a Program Support
Coordinator and Health Scientist to do the same work as
[Plaintiff] . . . one level above the position held by
[Plaintiff]." (Id. at 8.) Plaintiff asserts that she was
qualified for this position because it required a graduate

degree, and she had three such degrees while "[t]he existing Program Support Coordinator did not have a college education." (Id.) A plaintiff may demonstrate pretext "'by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation' or discrimination." Adkins v. CSX Transp., Inc., 70 F.4th 785, 793 (4th Cir. 2023) (quoting Sharif v. United Airlines, Inc., 841 F.3d 199, 203 (4th Cir. 2016)). At this stage, Plaintiff's allegations of discrimination, alongside her allegations that the Agency advertised a new position encapsulating her job responsibilities the day her employment terminated, are sufficient to support an inference that Plaintiff was terminated

because of her disability in violation of the Rehabilitation Act.[8]

**B.    Retaliation**

"Courts typically apply the standards for Title VII retaliation claims to ADA and Rehabilitation Act retaliation claims." Prosa v. Austin, No. ELH-20-3015, 2022 WL 394465, at *26 (D. Md. Feb. 8, 2022) (citing Laird v. Fairfax Cnty., 978 F.3d 887, 893 n.5 (4th Cir. 2020); S.B. ex rel. A.L. v. Bd. of Educ. of Hartford Cnty., 819 F.3d 69, 78 (4th Cir. 2016); Rhoads v. F.D.I.C., 257 F.3d 373, 391 (4th Cir. 2001)).

To establish a prima facie retaliation claim under the Rehabilitation Act, a plaintiff must allege "(1) that she has engaged in [protected] conduct[;] (2) that she suffered an

---

[8] Defendant has presented affidavits in support of its motion for summary judgment in the alternative. "As a general rule, summary judgment is appropriate only after 'adequate time' for discovery." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996). Critical to Defendant's arguments in support of the motion for summary judgment is at least one fact, supported by affidavit: that all interviewees were advised the position would terminate at the end of the fiscal year unless new grant funding was provided. (See Def.'s Br. (Doc. 10) at 3–4; EEO Investigative Affidavit (Doc. 10-16) at 4.) However, in responsive pleadings, Plaintiff states that she "was appointed on February 19, 2019 on a term contract that was not presented as being subject to any one grant being funded," and "the agency received grant funding to survey studies for fiscal year 2020." (Pl.'s Resp. (Doc. 12) at 6, 7.) Plaintiff is proceeding pro se, and although the response is not verified, this is sufficient to decline converting the motion to dismiss to a motion for summary judgment.

adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action."[9] Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002). Again, Plaintiff must plead facts that permit this court to reasonably infer each element of a prima facie retaliation claim.

The Agency argues that "Plaintiff fails to allege sufficient facts to show she engaged in or opposed protected activity," "fails to establish causation by temporal proximity," and "does not allege specifically what duration passed between the filing of an EEOC charge and the alleged retaliatory conduct." (Def.'s Br. (Doc. 10) at 17-18.)

A plaintiff may allege a causal link in one of two ways: (1) alleging "the existence of facts that suggest that the adverse action occurred because of the protected activity," or (2) alleging "that the adverse act bears sufficient temporal proximity to the protected activity." Roberts v. Glenn Indus.

---

[9] "The ADA's Title II and the Rehabilitation Act 'differ only with respect to the third element, causation.' Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461 (4th Cir. 2012). 'To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded "solely by reason of" his disability; the ADA requires only that the disability was "a motivating cause" of the exclusion.' Id. at 461-62 (quoting Baird ex rel. Baird v. Rose, 192 F.3d 462, 468-69 (4th Cir. 1999)." Wicomico Nursing Home v. Padilla, 910 F.3d 739, 750 (4th Cir. 2018).

Grp., Inc., 998 F.3d 111, 123 (4th Cir. 2021) (cleaned up).

"[E]stablishing a 'causal relationship' at the prima facie stage

is not an onerous burden." Id. at 127.

"Save for situations in which the adverse employment

decision follows the protected activity 'very close[ly],' 'mere

temporal proximity' between the two events is insufficient to

satisfy the causation element of the prima facie requirement."

Perry v. Kappos, 489 F. App'x 637, 643 (4th Cir. 2012) (quoting

Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

The Fourth Circuit has held that a lapse of three to four months

between the protected activity and adverse action is "too long

to establish a causal connection by temporal proximity alone."

Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th

Cir. 2006). This Circuit has even held that a mere ten-week

separation between the two events "is sufficiently long so as to

weaken significantly the inference of causation between the two

events." King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir.

2003).

"Where the time between the events is too great to

establish causation based solely on temporal proximity, a

plaintiff must present 'other relevant evidence . . . to

establish causation,' such as 'continuing retaliatory conduct

and animus' in the intervening period." Perry, 489 F. App'x at

643 (citing <u>Lettieri v. Equant Inc.</u>, 478 F.3d 640, 650 (4th Cir. 2007)).

Plaintiff describes two separate instances in which she participated in protected activity by making EEO complaints: she "was engaged in prior EEOC action vis-à-vis the Agency" between 2010 and 2012, (Compl. (Doc. 1) ¶ 6), and she engaged in EEO activity related to the termination at issue in this case beginning on September 9, 2019, (EEO Counselor Report (Doc. 10-11) at 1). Based on these facts, Plaintiff cannot allege a temporal proximity between this activity and her termination because the first activity occurred nearly 10 years before Plaintiff's employment as Program Support Assistant and because the second activity began after Plaintiff had already been informed of her termination. Though Plaintiff alleges other facts indicating that MIRECC were aware of her 2010 EEO activity prior to her termination, and that EEO activity was referenced during a meeting about her termination, (see <u>supra</u> Section I.B), she does not allege any animus related specifically to her EEO activity itself from which this court can infer that she suffered retaliation in violation of the Rehabilitation Act.

## V.  <u>CONCLUSION</u>

Plaintiff brings claims under the Rehabilitation Act for discrimination and retaliation against Defendant Denis R. McDonough, Secretary of the Department of Veterans Affairs. Plaintiff alleges sufficient facts to state a claim for relief for disability discrimination, but does not sufficiently allege a claim for retaliation.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, (Doc. 9), is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's retaliation claim is dismissed without prejudice.

This the 6th day of February, 2024.

_____
United States District Judge